PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ MALAVÉ, Defendant and Appellant.

No. 8941. Argued December 3, 1941.—Decided January 23, 1942.

*Genaro Cautiño Bruno* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The district attorney charged Manuel Durán and José Malavé in the Municipal Court of Guayama with a violation of Act No. 47 of 1930 (Session Laws, p. 366), committed as follows:

"Said defendants, Manuel Durán and José Malavé, who are employees of the firm of Sucrs. de José González y Cía., *S. en C.*, a limited partnership, the former as chief clerk and the latter as overseer of the place known as Colonia Jobos, belonging to the aforesaid firm, and who are authorized to engage and dismiss laborers working as such on said Colonia Jobos, on or about October 5, 1940, in said Colonia Jobos, Municipality of Guayama, within the municipal judicial district of Guayama, which forms part of the judicial district of Guayama, P. R., did unlawfully, wilfully, and maliciously and in their respective capacities as chief clerk and overseer, intimidate, coerce, threaten to, and actually dismiss from work Rufino Vega, a laborer, for the purpose of inducing said laborer to vote at the last general election in Puerto Rico held on November 5, 1940, in accordance with the desire of the defendants and of their employers, who constitute the aforesaid firm, that is, that he should cast his vote for the Partido Unificación Puertorriqueña, which is not and was not his party, then and there, and for which he did not wish to vote at said election."

On June 17, 1941, the case was called for trial *de novo* in the district court, to which it had been appealed. When the prosecution rested, the defendant filed a motion for nonsuit which was overruled. After hearing the evidence for the defendant, the court rendered judgment discharging Manuel Durán and convicting José Malavé. Thereupon the latter took the present appeal, and in his brief he urges that the court erred in overruling said motion and in rendering a judgment which is contrary to the facts, the evidence, and the law. The prosecuting attorney of this court in his brief asks for the reversal of the judgment because of the insufficiency of the evidence.

From an examination of the record, we are convinced that the judgment appealed from ought to be reversed.

The statute, with the violation of which the defendant-appellant is charged, provides that:

"Any officer, employee or agent of a corporation, firm or other person, invested with power or authority to dismiss laborers or to employ them, who by coercion in any manner attempts to dismiss any such laborer or to reduce his compensation as such laborer, in order to induce him to vote at any legal election according to the desires of the corporation, or of the officer or agent representing it, or who in any manner attempts to examine the ballot of such laborer, shall be guilty of misdemeanor." Section 2 of Act No. 47 of 1930 (Session Laws, p. 366) to protect workmen in the exercise of the right of suffrage, and for other purposes.

For the offense to be committed it is not sufficient that a laborer be involved but such laborer must be legally qualified to vote.

Summing up the jurisprudence on the matter Corpus Juris says:

"An indictment designed to charge an offense for unlawfully preventing a qualified voter from exercising the right of suffrage should charge the offender with interfering at an election with a voter qualified to vote and offering to vote. . . . In an indictment for a conspiracy to keep lawful voters from voting, it is not necessary to allege the names of the persons who being entitled to vote were to be prevented from the exercise of the elective franchise by defendants. But an indictment for a conspiracy to intimidate a particular citizen of the United States for the purpose of preventing his free exercise of the right to vote must allege that the individual sought to be intimidated was qualified to vote." 20 C.J. 293, 294.

And this is so because the right of suffrage is a political right or privilege which is available only to such citizens as meet the statutory provisions and comply with its requisites. One may be a laborer and yet not be entitled to vote.

Nowhere in the charge above transcribed is it alleged that the laborer Rufino Vega was a qualified voter. This would be sufficient to justify a reversal. Although it is not necessary, it might be well to add that such fact was not shown at the trial.

■ But there is even more. For a violation of the statute to exist, it is necessary not only that a laborer qualified to vote be coerced in some way, dismissed, or subjected to a reduction of compensation, but also that such act be done in order to induce him to vote at any legal election according to the wishes of the corporation, or of the officer or agent representing it, or that some attempt be made in any way to examine his ballot; and here, as stated by the prosecuting attorney in his brief:

". . . Assuming that the evidence is sufficient to show the coercion referred to in said section, no showing is made at all regarding the purpose thereof in connection with the right of Rufino Vega to vote freely at the general election of 1940. At the most, what might be concluded is that Rufino Vega was dismissed because he was a party worker against the political views of his employer; but this is not what the said statute punishes, for its purpose is to protect the laborer's right to vote and not his propaganda activities."

And so it is. At the trial, answering questions put by the district attorney, the laborer Rufino Vega himself testified:

"Q. Who dismissed you? —A. José Malavé. —Q. José Malavé? Why?—A. Well, that afternoon when I went to get my wages. —Q. Which afternoon?—A. On Saturday, October 5, I went to get my wages and he called me and said: 'Vega, I got a little note from the office where it is said that what you do during working hours is to engage in Popular propaganda; and then I said to him: 'Then, there is no work for me on Saturday?' and he did not answer my question but said: 'You must call at the office,' and I went to the office on the 7th, it was a Monday," (Tr. of Ev., p. 6.)

"      *     -    *       *       *       *       *       *

"Q. And did you speak to Mr. Manolo Durán? —A. Yes, sir. —Q. And what did you tell him? —A. I then told him: 'Don Manolo, I come here to you to find out why I have been dismissed.' Judge: Speak distinctly so that one may understand you. —A. I said to him: 'Don Manolo, I have come here to know why I have been dismissed,' and he said to me: 'Are you Rufino Vega?' and I answered yes and he said to me: 'Something against you has come to my knowledge, that you are making propaganda during working hours.' District

attorney: What kind of propaganda? —A. For the Popular Party, and I then told him that that was not true, and he then said that he wanted to give work to workmen, but that he would like them to be on the side of his concern." (Tr. of Ev., p. 7.)

The appeal must be sustained, the judgment appealed from reversed, and substituted by another discharging the defendant.

Mr. Justice Snyder took no part in the decision of this case.